**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ERIC WANG | * | |
| PLAINTIFF | * | |
| v. | * | Civil Action No: 8:17-cv-02131-GJH |
| THE CITY OF ROCKVILLE | * | |
| DEFENDANT | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The City of Rockville, Defendant, by KARPINSKI, COLARESI & KARP, P.A. and DANIEL KARP, its attorneys, submits this Memorandum in support of its Motion for Summary Judgment and states the following.

### I. INTRODUCTION

Eric Wang ("Plaintiff") filed suit against the City of Rockville (hereinafter, the City) on June 12, 2017, alleging the City violated the Maryland Public Information Act, the United States Constitution and the Maryland State Constitution in denying him a fee waiver for information he requested regarding automated traffic enforcement systems. Plaintiff asserted two claims against the City of Rockville:

| | |
|---|---|
| Count I: | Violation of Maryland Public Information Act |
| Count II: | Violation of the United States and Maryland State Constitutions |

The City filed a Notice of Removal of the case to federal court on July 28, 2017 based upon the First Amendment claim asserted by Plaintiff. The City then filed a Motion for Summary Judgment as to both claims, asserting Plaintiff failed to state a claim upon which relief could be granted. Plaintiff filed a motion for Partial Summary Judgment and Permanent Injunctive Relief. The court denied both motions. Therefore,

the City submitted its answer and both parties engaged in discovery. After the completion of discovery, the City submits this motion for summary judgment as to both counts alleged by Plaintiff.

## II. **STATEMENT OF UNDISPUTED MATERIAL FACTS**

The City received Plaintiff's initial Maryland Public Information Act ("MPIA") request on April 24, 2017. A copy of the original request is attached as Exhibit 1. Plaintiff's original, overly broad request spanned five pages and included over sixteen extensive requests for multiple documents regarding automated traffic enforcement systems. Plaintiff requested, *inter alia,* communications between City officials and administration, as well as communications between the City and the manufacturers of the automated traffic enforcement systems.

Louise Atkins (hereinafter, "Ms. Atkins"), a City of Rockville MPIA staff person, spoke with Plaintiff in an attempt to help him narrow his request by specifying relevant City officials and staff persons, instead of requesting information from all employee emails. She also suggested limiting the timeframe of the data he requested in order to eliminate the City's IT department's need to restore backup email tapes. *See* Exhibits 2 and 3, Affidavits of Ms. Atkins and Cynthia Walters (hereinafter, Ms. Walters), the Deputy City Attorney. By narrowing Plaintiff's request, Ms. Atkins avoided searching all employee emails and restoring backup email tapes, thereby reducing the time and cost Plaintiff would incur. Ms. Atkins sent her advice, including the suggested list of individuals, and suggested timeframe via email on May 1, 2017. *See* Exhibit 4.

Plaintiff then submitted a new draft of his MPIA request on May 4, 2017. *See* Exhibit 5. The new request still consisted of four pages of broad requests, but included a narrowed timeframe, and only requested emails among members of City Council. Plaintiff did not indicate

2

he was a member of the press in either request. Additionally, Plaintiff never mentioned he planned to release the information he received to the Maryland Drivers Alliance (hereinafter, "MDA"), a membership-based organization with the goal of dismantling automated traffic enforcement systems.[1] Ms. Atkins replied to Plaintiff the same day confirming her receipt of his amended request. *See* Exhibit 6. Ms. Atkins also indicated that the City would be in touch with an estimated cost. MPIA staff members worked diligently to gather information for Plaintiff by sending emails about the request, having City Council officials check their inboxes, having meetings, and drafting and editing emails to send to Plaintiff *See* Exhibit 7, detailing the involved process.

On May 11, 2017, Ms. Atkins contacted Plaintiff via email, and provided most of the information he requested. *See* Exhibit 8. She indicated a large amount of the information he requested was available online and provided links for him to access the files. Atkins advised Plaintiff that the City had already spent more than two hours searching for the information requested, and that subsequent research, review, and production would come at a cost to him. Ms. Atkins estimated the time between four to five hours and explained the cost would likely be between $125-$250. Ms. Atkins told Plaintiff the City would reach out again once it had completed the review process and had a concrete cost to provide him. At this juncture, Plaintiff had not requested a fee waiver.  On May 19, 2017, Tonya Porter (hereinafter, "Ms. Porter"), the Rockville City Executive Assistant, sent Plaintiff a ten-day letter via email explaining the City could not provide all of his requested documents within ten days. *See* Exhibit 10. She explained the documents would likely be available May 26, 2017, provided he pay a fee of $150.25. The

---

[1] The MDA Alliance has submitted MPIA requests in the past and the City has provided the information for free. The organization had a different name at the time (StopBigBrother). Its MPIA requests are all included in Exhibit 9.

email also stated that the records were in the City Attorney's office for review.[2]

The City did not receive a copy of Plaintiff's elaborate, three-page fee waiver request until May 21, 2017. *See* Exhibit 11. Plaintiff's request did not speak to the amount charged or his ability to pay; rather, Plaintiff made a broad claim that his request for information was in "furtherance of the public interest." He also explained what he believed to be applicable law before stating the reasons he believed he deserved a fee waiver.

Plaintiff first argued he "intended" to write an op-ed piece about the "proliferation" of automated traffic enforcement systems. He conceded he was not a professional journalist and said that he had written 57 *opinion* pieces in ten years.[3] While Plaintiff indicated some of the forums to which he has provided opinion pieces in the past, he did not indicate to which media outlet he would be providing his op-ed piece, which is customary when requesting a fee waiver as a journalist or member of the media. *See* Exhibit 12, a selection of MPIA requests submitted by members of the press. Plaintiff also said he "intended" to release the information to the MDA and implied the organization would then broadly disseminate the information Plaintiff provided to the public. Plaintiff never claimed to have a commitment from the MDA that it would release the information Plaintiff collected from the City. Additionally, he never challenged the reasonableness of the fee or claimed he could not pay the fee.

Next, in Plaintiff's fee waiver request, he quoted *Baltimore v. Burke, infra,* arguing that the documents he requested "[concern] one of the City's major financial undertakings' and the government[s] operations or activities and is a matter of great public interest.'" Plaintiff argued that Rockville's 2017 fiscal year budget, which he obtained online with the assistance of Ms.

---

[2] The City decided it could release all of the documents requested by Plaintiff.

[3] All of his opinions pieces deal with First Amendment issues, not traffic issues.

Atkins, indicated that the projected revenues generated from the automated traffic enforcement systems would not support any new capital improvement projects. Plaintiff also asserted a taxpayer subsidy would be necessary to support the cameras themselves. He stated the program is worse than a "self-licking ice-cream cone."

Finally, Plaintiff claimed "financial imbalances" suggested the City is a "Surveillance State" trying to expand its ability to watch citizens. He forecasted the City would eventually have "an automated traffic enforcement device on every block and that the City [would] force a 'taxpayer subsidy' on hard-working families to pay for the city's social engineering program."

On May 24, 2017, Ms. Walters assisted staff in reviewing the fee waiver request and consulted with both the City Attorney, and the City Manager, Robert Dispirito who is the City's Official Custodian of Records. *See* Exhibit 3, Cynthia Walters' Affidavit. Ms. Porter contacted Plaintiff via email on May 26, 2017, to notify him that the City reviewed and considered his fee waiver request, but that the City did not intend to grant his request "as the request [was] not in the public interest." *See* Exhibit 13. Ms. Porter further explained the $150.25 fee represented five hours of staff research and review time, and the City provided the two most expensive hours free of charge.[4] Finally, she informed Plaintiff she saved him twenty-cents per page by providing the files in PDF format via email.

Plaintiff requested further explanation via email on May 30, 2017, part of Exhibit 13. Ms. Atkins replied by email on June 1, 2017, also part of Exhibit 13. She reiterated that the fee waiver and the reasons provided for the fee waiver had been considered, but the City did not find Plaintiffs reasons to be in the public interest or that a fee waiver was in order. *See* Exhibit 3,

---

[4] Although the MPIA states the **initial** two hours will be provided free of charge, Ms. Walters provided her time, which occurred after the first two hours, free of charge as those were the most expensive. *See* Exhibit 3

Cynthia Walters' Affidavit.

Plaintiff initiated his lawsuit on June 21, 2017. The allegations generally track the assertions contained in Plaintiff's May 21, 2017 fee waiver request. *See* Exhibits 11 and 15. However, there are a few exaggerations. For example, in his first paragraph, Plaintiff argues he is a "passionate advocate for civil rights, civil liberties, and limited government" and describes himself as a "prolific writer," but has only written about sixty **opinion pieces** in ten years. The media outlets to which he has provided opinion pieces, refer to him as an "opinion contributor," or "guest observer," not a journalist or member of their staff. Many of the articles even include disclaimers alerting members that the entity does not support Plaintiffs position, and that Plaintiff is not a member of the staff. *See* Exhibit 14, a collection of Plaintiffs most recent articles. Plaintiff also always explains that he is an attorney and not a journalist at the bottom of his own articles. Additionally, his Complaint adds that he "has never received any compensation for his articles." *See* Exhibit 15, the Complaint.

Next, as stated in his fee waiver request, Paragraph 11 of the Complaint asserts Plaintiff intended to use the information he requested to write an opinion article about automated traffic enforcement systems, in order to enhance public understanding of the program. Paragraphs 20 and 21 of the Complaint add, "upon information and belief," that the City has mistaken the interests of its officials with the public interest and denied the fee request in furtherance of the interests of the officials rather than the public. Plaintiff also alleged, with no factual support, that the City denied the fee waiver request because of the City's supposed animus against Plaintiff's viewpoint and Plaintiff's expressed intention to use the requested documents in a way that defames certain government officials and automated traffic enforcement systems.

## III. STANDARD OF REVIEW

A party may move for summary judgment under the Federal Rules of Civil Procedure "at any time until 30 days after the close of discovery." FED. R. Civ. P. 56(b). The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. Civ. P. 56(a). The party moving for summary judgment must "[cite] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations...admissions, interrogatory answers or other materials; or... [show]...the materials cited to do not establish the absence...of genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1)(A)-(c)(1)(B). In addressing a MPIA dispute, courts **should** consider the agency record, but also "facts generated by pleadings, affidavit, deposition, answers to interrogatories, admission of fact, stipulation and concessions." *Action Comm. for Transit v. The Town of Chevy Chase (ACT),* 229 Md. App. 540, 145 A.3d 640, 559 (2016) (quoting *Prince George's County v. The Washington Post Co.,* 149 Md. App. 289, 304 (2001)).

## IV. ARGUMENT

### A. The City is entitled to summary judgment as to Count I as a matter of law because Plaintiff failed to show his inability to pay the reasonable fee and failed to sufficiently establish the fee waiver would be in the public interest.

Plaintiff has failed to show he is indigent or that the information he requested would be used to serve a public purpose and, Md. Code Ann. General Provisions Art. §4-206 provides that one is entitled to a fee waiver if he alerts the agency to the fact that he is indigent, and he completes the subsequent affidavit, or if "the official custodian determines that the waiver [is] in the public interest," after considering the applicant's ability to pay the fee. As Plaintiff did not

assert an inability to pay the fee, and also did not sufficiently show the fee waiver would be in the public interest, the City was well within its rights to deny the Plaintiff's fee waiver. Therefore, the City is entitled to summary judgment on Count I, as a matter of law.

> ### i. Plaintiff failed to show he could not pay the reasonable fee, and administrators considered other relevant factors, therefore the custodian of records had discretion in whether or not to grant Plaintiff's fee waiver.

Under §4-206, the official custodian of public records may charge a reasonable fee for searching for, preparing, and reproducing an applicant's requested records. The official custodian of public records, however, "may not charge a fee for the first two hours that are needed to search for a public record and prepare it for inspection." Md. Code Ann. General Provisions §4206(c). Additionally, under §4-206(e):

> The official custodian **may** waive a fee under this section if the **applicant asks for a** waiver; and
> (i)      the applicant is indigent and files an affidavit of indigency[5]; or
> (ii)     **after consideration of the ability of the applicant to pay the fee** and other relevant factors, **the official custodian determines** that the waiver would be in the public interest (emphasis added)

Based on the language of §4-206 and the opinions expressed by the Attorney General, the standard is to impose a fee, unless the applicant establishes a need for a fee waiver. *See* 81 Md. Op. Att'y Gen. 154 (1996) (affirming the legislative position that taxpayers should not be responsible for subsidizing MPIA applicants, beyond the first two hours of searching, preparing and reproducing); *see also ACT,* 229 Md. App. at 555 ("The MPIA provides that the official custodian is **ordinarily entitled** to charge an applicant a reasonable fee..."). (emphasis added)

---

[5] This section of the statute provides that an applicant is indigent if "an individual's family household income is less than 50% of the median family income for the State as reported in the Federal Register." Md. Code Ann. General Provisions §4-206(2).

An individual's ability to pay is the only explicit factor within the statute. The Maryland

Public Information Act Manual (hereinafter, "the Manual") suggests some factors that may be

relevant in deciding whether the custodian should waive a fee. The authors of the Manual write:

> In deciding whether to waive a fee, an official custodian may find it helpful
> to look at case law interpreting the comparable FOIA provision, 5 U.S.C. §
> 552(a)(4)(A). In one useful case, *Project on Military Procurement v. Dep't.
> of Navy,* 710 F. Supp. 362 (D.D.C. 1989), the federal court identified as
> material factors the potential that the requested disclosure would contribute
> to public understanding and the significance of that contribution. *See also
> Larson v. CIA,* 843 F.2d 1481 (D.C. Cir. 1988) (requester of information
> under FOIA seeking fee waiver must not have commercial interest in
> disclosure of information sought and must show that disclosure of
> information would be likely to contribute significantly to public
> understanding of government operations or activities); *National Treasury
> Employees Union v. Griffin,* 811 F.2d 644 (D.C. Cir. 1987) (fee waiver
> requests under FOIA grounded on public interest theory must show
> connection between material sought and matter of genuine public concern
> and must also indicate that fee waiver or production will primarily benefit
> public); *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 882 F. Supp.
> 1158 (D. Mass. 1995) (agency justified in denying request for fee where
> disclosure was not likely to contribute significantly to public understanding
> of government operations); *cf. Diamond v. FBI,* 548 F. Supp. 1158
> (S.D.N.Y. 1982) (overturning agency's decision denying fee waiver when
> university professor sought materials for academic lectures and articles).
> Maryland Public Information Act Manual 7-4 (14th ed., October 2015).[6]

The Manual explains that there are other relevant factors the custodian may find helpful, and

therefore the list in the paragraph above is not meant to be exclusive. However, neither the

Manual nor the cited case law lists all relevant factors. Thus, the custodian of records clearly

has great discretion in determining what is relevant in a particular case.

The Manual provides that the Freedom of Information Act (FOIA) and relevant case law

---

[6] While the Manual is not considered binding authority, "it is 'designed to be a resource for a
range of users' including 'the government officials who have the responsibility to implement the
Act's requirements" *Action Committee for Transit v. The Town of Chevy Chase,* 229 Md. App.
540, 556 (2016) (quoting Preface to the Maryland Public Information Act Manual, iii (14th ed.,
October 2015).

that examines the provision may be helpful in determining whether a fee should be waived. In

*ACT,* the Court of Special Appeals notes "the public policies advanced by the FOIA and the

MPIA are **virtually** identical." 229 Md. App. at 555. The goal of both the MPIA and FOIA is to

allow broad access to official information. *MacPhail v. Comptroller of Maryland,* 178 Md. App.

115, 119 (2008). However, one of the major differences that separates the two laws is the actual

text. The relevant part of the FOIA reads:

> Documents shall be furnished without any charge or at a charge reduced
> below the fees established under clause (ii) if disclosure of the information
> is in the public interest because it is likely to contribute significantly to public
> understanding of the operations or activities of the government and is not
> primarily in the commercial interest of the requester. 5 U.S.C.
> §552(a)(4)(A)(iii).

An applicant's indigency or ability to pay is not a factor under the FOIA. Specifically, under

the FOIA, an applicant must receive his requested documents for free, or at a minimal cost, if the

information requested is in the public interest, and is not primarily for the commercial interest of

the applicant. *Id.* Section 500.107(f)(1)(iv) further distinguishes the FOIA from the MPIA by

naming entities that will not be charged a fee, including educational institutions, non-commercial

scientific institutions, or representatives of the news media. Furthermore, under the FOIA, Federal

courts do not consider the size of the fee even if it is only a nominal amount. *See Crocker v.

Bureau of Alcohol, Tobacco and Firearms,* 882 F.Supp. 1158, 1162 n.3 (D. Mass. 1995) ("Note

that the minor amount in controversy plays no part in the Court's rationale and recommendation

in this matter.").

Comparatively, under the MPIA, the fee may be waived, **only** if the applicant requests a fee

waiver and either (1) the applicant claims he is indigent and files an affidavit of indigency; or (2)

the custodian of records examines the applicant's ability to pay and other relevant factors and

then determines the waiver would be in the public interest. Md. Code Ann. General Provisions

Art.§4-206(e). (emphasis added) The explicit language of the statute, as well as the Maryland

case law, reinforce that the applicant's ability to pay is a very "highly relevant" factor.

In *Baltimore v. Burke,* the agency refused to produce several documents the plaintiff

requested about the Patapsco Water Waste Treatment Plant under the MPIA. The agency asserted

it could only release some information and requested a $50,000 fee for 160,000 pages of

documents. 67 Md. App. 147, 148-49 (1986). The agency filed a claim with the court seeking the

court's permission to validate and continue its refusal to supply documents. The plaintiff, a

**reporter** for the News American, filed a counterclaim requesting that the court compel the agency

to release the documents and waive the fee. *Id.* at 150. At the hearing, the judge ordered all fees

be waived as long as the information requested did not exceed 500 pages. *Id.* at 151.

The appellate court affirmed the decision of the hearing judge. The Court of Special Appeals

emphasized Md. Code Ann. State Gov't Art. §10-612(b), which provides that the MPIA "shall be

construed in favor of permitting inspection of a public record, with the least cost and least delay

to the person . . . [who] requests the inspection." *Id.* at 156.[7] The court held the agency only

considered the costs to itself, and the perceived ability of the defendant to pay the fee as an

employee of a Baltimore newspaper, without trying to minimize the cost to the defendant. *Id.* at

157. The court called this behavior "capricious and arbitrary." *Id.* Additionally, the court

highlighted that the agency did not consider "other relevant factors" as required under what is

now Md. Code Ann. General Provisions Art. §4-206(e)(2). *Id.* The court gave examples of the

relevant factors the reviewing agency should have considered, including: "the **health hazard**

created by discharge of inadequately treated sewage...the importance of public exposure

to...delayed and extremely costly improvements to the... [w]ater treatment plant, and the danger

---

[7] Section 10-012(b) is presently codified as Md. Code Ann. General Provisions Art. §4-103(b).

that **imposing a fee for information upon a newspaper publisher** might have a chilling effect on...exercise of freedom of the press." *Id.*

In *Short v. Bishop,* an unreported case, Short, an inmate, requested the Warden to provide multiple recordings about the detention facility. 2016 WL 916429 (Maryland Court of Special Appeals, decided March 9, 2016).[8] In response to one of Short's several requests, the Warden demanded a $1,000 fee to be paid in advance, but the inmate refused to pay the fee. Plaintiff requested, in connection with his petition for judicial review, the court find he was entitled to the requested records at no charge due to indigency. The court rejected Plaintiff's request for relief.

On appeal, the court found the fee to be reasonable. The court cited *Burke* and the Manual to explain that a waiver may be appropriate when the requester seeks information for a public purpose, and not a narrow personal or commercial purpose. The court further explained that a public purpose justifies spending public funds to comply with the request. The appellate court noted the Warden rejected the fee waiver with the conclusory statement that, "[a]fter review and consideration of your request, your ability to pay the estimated fees, and other relevant factors, I have determined that such a waiver is not the public interest." *Id.* at 8.

Because the court could not determine whether the denial of the fee waiver was arbitrary or capricious from the administrative record alone, the court remanded the case to the trial court to determine the issue. The court did not provide examples of what "other relevant factors," the Warden should have considered, or what the trial court should consider on remand.

The most recent Maryland case is *Action Committee for Transit v. Town of Chevy Chase.*

---

[8] The City understands opinions of the Maryland Court of Appeals and the Maryland Court of Special Appeals are not binding precedent within the rule of *stare decisis* but may be cited for other purposes. This rule does not prevent a federal court from considering Maryland unreported opinions.

229 Md. App. 540 (2016). In April 2014, the Action Committee for Transit (ACT) requested

various documents and meeting minutes regarding the relationship between the Town and four

firms the Town hired in order to protect its interests in regards to the Purple Line (a proposed

light rail transit system). The non-stock, non-profit organization challenged the Town's denial of

several fee waiver requests. The total amount of fees is not disclosed within the opinion, but the

Town requested an initial deposit of $950 before it would begin researching.[9] The Town rejected

the fee waiver requests because it "anticipated... [it would] expend a significant amount of time

researching and processing [t]he requests." *Id.* at 547.

An additional MPIA request for similar documents, also accompanied by a fee waiver

request, was submitted in May 2014. The Town rejected the fee waiver request, stating "[p]lease

be advised your request for a waiver has been considered and denied." *Id.* at 548. The last two fee

waiver requests sent in October 2014 and November 2014, argue the fee waiver should be

granted because the information requested would serve the public interest, that the information

was not being used for commercial purposes, and that **because the organization did not have

the financial resources to pay the fee."** Again, the Town rejected this fee waiver request and

demanded a deposit of $879. *Id.* at 549.

An activist then submitted two MPIA requests to the Town on November 10, 2014. *Id.* at

549. He quickly withdrew the first request because the title read "Re: Maryland Public

Information Act Request on behalf of Action Committee for Transit." *Id.* The title of his second

request read: "Re: Maryland Public Information Act Request." The activist's second MPIA

request also included a fee waiver request with a detailed explanation of his involvement with the

---

[9]  ACT submitted an MPIA request related to the same general topic as the information requested
within its February 2015 MPIA request. Therefore, the Town said it would not conduct two hours
of free research for ACT. 229 Md. App. 540 at 547.

media, which included **writing for one specific blog about the Purple Line,** and also

**publishing several books.** *Id.* at 549-550. The town rejected the fee waiver stating:

> We do not believe this request is being made in your capacity as a member
> of the media. This belief is based on the first request you submitted and then
> immediately withdrew on November 10, 2015 which clearly indicated it was
> being submitted on behalf of [ACT], along with your known affiliation with
> ACT. Accordingly, the Town will expect payment in full for all fees
> associated with the request. 229 Md. App. at 550-51.

ACT and the activist filed a complaint challenging the denial of their fee waiver requests.

The Town argued the case should be dismissed, or that it should be granted summary judgment

because it had considered "other relevant factors," but found them to be insufficient to warrant a

waiver. *Id.* at 552. However, the appellate court noted the Town neglected to attach an affidavit

explaining its reasoning or decision-making process. *Id.* The Town also asserted that ACT has a

history of attacking the Town in its articles and therefore the decision making process explained

in its memorandum should be sufficient. *Id.* at 552-53. The Town argued plaintiffs sought the fee

waivers for their personal interest, in retaliation against the Town for its opposition to the Purple

Line. *Id.* The Town supported this accusation by saying ACT posted false accusations against the

Town on ACT's website, and therefore the Town genuinely disbelieved the claims ACT made for

fee waivers were in the public interest. *Id.* at 553.

The trial court granted the Town's motion for summary judgment, holding the Town did

not have a responsibility to articulate the specific factors upon which it relied on in rejecting a

fee waiver request. *Id.* at 554. Both ACT and the activist appealed. On appeal, the Court of

Special Appeals reversed the trial court's decision. *Id.* at 556.

The Court of Special Appeals reviewed the circuit court's decision *de novo* and noted that

when reviewing an agency's decision regarding a MPIA request, the court should consider the

agency record, "but also facts generated 'by pleadings, affidavits, depositions, answers to interrogatories, admissions of fact, stipulations and concessions.'" 229 Md. App. 540 at 559 (quoting *George's County v. The Washington Post Co.,* 149 Md. App. 289, 304 (2003). Therefore, the Town's failure to list specific factors in denying the fee waivers did not require the court to reverse the trial court's decision. 229 Md. App. 540 at 563. However, even using those materials, the Town could not show that it had considered "other relevant factors." *Id.* After reviewing the fee waivers of ACT and the activist, the court agreed the statute did not have a defined standard for a custodian's response to a fee waiver request but decided that a custodian must still consider the applicability to pay, along with other relevant factors. This allows an appellate court to review the decision-making process in order to determine whether the agency gave appropriate consideration to "other relevant factors." *Id* at 561-64. The court held that the Town's "bald and conclusory statement provide[d] no insight whatsoever as to the actual considerations that motivated the town to deny the request," and therefore the court found the response to be insufficient. *Id* at 563.

Based on these cases, the analysis regarding the sufficiency of the fee waiver must begin with the Plaintiffs ability to pay the reasonable $150.25 fee. Under the FOIA, an individual's ability to pay the fee is irrelevant, and members of the media are provided documentation at no cost simply upon request; however, under the MPIA, an individual's ability to pay is emphasized by being distinguished from "other relevant factors." Although Plaintiff disagrees, it is clear that if the ability of an individual to pay is adjudged to be of minimal importance the express emphasis the legislature places on an individual's ability to pay would be mere surplusage. In reviewing statutory interpretation, a textualist approach should be followed, reading the statute as a whole to ensure no word is deemed irrelevant. *See*

*Immanuel v. Comptroller of Maryland,* 449 Md. 76, 86 (2016) ("We consider first the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.") (citations omitted). Therefore, if the legislature deemed an individual's ability to pay irrelevant or equal to the other factors, the legislature would not have emphasized an individual's ability to pay when drafting the MPIA; rather, it would have followed the structure of the FOIA and not mentioned an individual's ability to pay.

Plaintiff takes the opposite position in his Memorandum in Opposition to Summary Judgment. *See* Exhibit 16 at 3-4. He argues that "other relevant factors" is also an enumerated factor which government agencies must consider. This is partially true, but Plaintiff ignores the concept of legislative intent in drafting the statute. The fact that an individual's ability to pay the reasonable fee is extracted from "other relevant factors" indicates that the drafters wanted that factor to have more significance than any other factor. Plaintiff also asserts the City ignores the statute's preceding stand-alone clause "that already addresses a requester's ability to pay (which the City would regard as redundant)." *See* Exhibit 16 at 4. However, Plaintiff misses two critical points. First, the stand-alone clause above pertains to those who are **indigent,** as is defined by statute, and not an individual's ability to pay. The custodian has discretion regarding someone's ability to pay but does not have the same discretion for those deemed indigent by statute. Second, Plaintiff ignores the holding from *Immanuel.* The way in which Plaintiff interprets the statute creates surplusage.

Plaintiff admits he never asserted he could not pay the fee and that he never requested an affidavit of indigency as required by the statue referenced above. *See* Exhibit 16 at 2. Furthermore, Plaintiff works at Wiley Rein, a large, law firm based in Washington D.C. that

employs approximately 240 attorneys. Plaintiff earns $269,987 annually. *See* Exhibit 17, Plaintiff's Answers to Interrogatories. Plaintiff clearly has the means to pay and his ability to pay should be regarded as the most important factor, in line with statutory intent. While Ms. Walters did not know Plaintiffs exact salary, she knew he worked at Wiley Rein, and had a reasonable belief Plaintiff could pay the fee. Therefore, the City had the right to use its discretion and deny Plaintiffs fee waiver request.

As provided by the statute, and reinforced in *Baltimore v. Burke,* an agency must attempt to provide the documents with the least cost and delay possible to the requester. In *Burke,* the agency did not attempt to mitigate the cost or narrow the scope of the information requested. Rather, the agency proposed to charge Burke a $50,000 fee for 160,000 pages of information. However, in the present case, administrators worked with Plaintiff to narrow the scope of his request and decrease the cost to him. *See* Exhibit 3. The decision-maker considered the fact that staff worked diligently to help Plaintiff narrow his request, and that the City provided links to information Plaintiff could access without costs beyond the money it takes to power his computer or phone. The City complied with the statute by providing Plaintiff with two hours of free research and retrieval. *See* Exhibit 3. In fact, in this case, the two most expensive hours of review were provided free of charge in an attempt to decrease costs to Plaintiff. The administrators also considered that Plaintiff made no mention of his inability, or diminished ability to pay the reasonable fee. The common sense and administrative experience of MPIA administrators led them to believe that Plaintiff would not be burdened at all by the imposition of a modest fee.

It may be argued that this case is like *Burke* in that the City only considered Plaintiff's ability to pay the fee because of his position at a large firm, similar to the ability of the Baltimore newspaper to pay the fee. However, the fee in this case is only .003% of the fee in *Burke.*

Additionally, unlike the agency in *Burke,* the City considered other relevant factors, specifically: (a) none of the requested documents was refused; (b) most of the documents Plaintiff requested had been provided, *gratis,* by referring him to the City's website; (c) the City provided the two most expensive research hours for free; (d) the City spent five hours searching and reviewing the records; and (e) the City prepared all of the documents to send electronically, thereby saving Plaintiff additional cost. In addition to these factors, administrators had meetings about Plaintiff's requests and were in constant communication regarding his request. *See* Exhibits 3 and 7. In examining all of the factors taken into consideration by the administrative staff and considering the amount of time and effort the team expended, it is apparent that City's decision not to waive the fee was neither "capricious" nor "arbitrary."

   *ACT* is also distinguishable from the present case because the court in *ACT* focused heavily on the fact that the non-profit, non-stock organization did not have the financial resources to pay the fee. Therefore, the court held the organization's First Amendment right to speak should not be inhibited. However, in the present case, Plaintiff never requested a waiver for lack of resources, and never asserted that he could not pay the fee. His case is therefore not similar to *ACT.*

### ii. Plaintiff failed to establish his information request and fee waiver would serve the public interest.

   The MPIA manual offers guidance on whether a fee should be waived because it serves a public interest. It reads:

> To determine whether a waiver is in the public interest, the official custodian must consider not only the ability of the applicant to pay, but also other relevant factors. A waiver may be appropriate, for example, when a requester seeks information for a public purpose, rather than a narrow personal or commercial interest, because a public purpose justifies the expenditure of public funds to comply with the request. For example, in one case, the Court of Special

Appeals found that Baltimore City's denial of a reporter's request to waive fees was arbitrary and capricious because the City only considered the expense to itself and the ability of the newspaper to pay and did not consider other relevant factors. The Court suggested that relevant factors included the public benefit in making available information concerning one of the City's major financial undertakings and the danger that imposing a fee for information upon a newspaper publisher might have a chilling effect on the full exercise of freedom of the press. City of Baltimore v. Burke, 67 Md. App. 147 cert. denied, 306 Md. 118 (1986); see also 81 Opinions of the Attorney General 154 (1996) (waiver of fee depends on a number of relevant factors and cannot be based solely on the poverty of the requester or the cost to the agency). Maryland Public Information Act Manual 7-3 (14th ed., October 2015).

Plaintiff argues the information requested from the City would serve in the public interest because he "intended" to write an op-ed piece using the information he collected, and also "intended" to release the information to the MDA.

In his own fee waiver request, Plaintiff acknowledged that he is not a professional journalist.[10] See Exhibit 11, Plaintiffs Fee Waiver Request. Rather, he stated that he has written fifty-seven opinion pieces over ten years, and that he "intended" to write an op-ed piece about the proliferation of automated traffic enforcement systems in the metropolitan DC area. Plaintiff did not mention that he intended to write an op-ed or news piece for a particular newspaper, magazine or website. To date, Plaintiff has not written any opinion pieces about automated traffic enforcement systems, despite having the majority of the information he requested.[11]

---

[10] Publications that have published Plaintiff's op-ed pieces also acknowledge he is not a journalist or member of the media, often referring to him as an "opinion contributor" or "guest observer." See Exhibit 14, a selection of Plaintiff's published works. The publishers also often add disclaimers to his articles or post opposing articles written by their staff. (*See* Exhibit 14 at 60, USA Today article). See also footnote 6, supra.

[11] This fact further differentiates Plaintiff's case from *ACT*, because in *ACT* the activist was an author and blogger who "regularly contributed articles and…blog posts to *Dissent* magazine" about the Purple Line. 229 Md. App. 540,550 (2015). Unlike the activist in *ACT*, who regularly wrote about the topic for which he requested information, Plaintiff has never written an article

Plaintiff also indicated that he intended to submit the information to the MDA. However, Plaintiff contradicted this assertion when he admitted in his Answers to Interrogatories that he never wrote content for the MDA, and that he did not intend to write his opinion piece for the organization. *See* Exhibit 17, Plaintiff's Interrogatory answers. Additionally, Plaintiff never received a commitment from the organization promising it would disseminate any information Plaintiff produced. Rather, an unknown individual with the email address "mddriversalliance@gmail.com" replied to an email from Plaintiff on August 3, 2017 (almost two months after Plaintiff's initial MPIA request). *See* Exhibit 18, an email produced by the Plaintiff. The individual wrote "I realize I also neglected to respond to your comment about posting an op-ed or documents. The answer is yes, **if the material is relevant."** (emphasis added). This statement is a far cry from the MDA guaranteeing broadly to disseminate the information provided by Plaintiff.

Plaintiff alleges the information sent to the MDA would result in "broad" dissemination to the public. *See* Exhibit 11, Plaintiff's Fee Waiver Request. However, not only is the MDA a membership-based organization, it is also run through an online **blog** software called Blogger. Between September 22, 2017, and July 26, 2018, the blog has only added ten blog articles, the last being posted on April 10, 2018. Furthermore, the blog software allows users to "react" to the posts by selecting checkboxes marked "Agree" "HOT" "Insightful" and "disagree." The blog can be viewed here: http://www.mddriversalliance.org/. *See* Exhibit 19, Plaintiff's response to Request for Admissions. The post that received the most interaction only received three reactions. In no way does this compare to the distribution of information through a traditional media source like a newspaper or magazine. Additionally, the lack of interaction with the

---

about automated traffic systems; rather, he regularly writes about free speech. *See* Exhibit 14, list of Plaintiff's articles and footnote 3 <u>supra</u>.

articles is suggestive of the public's disinterest in the topic. Thus, it would be implausible to suggest, as Plaintiff does, that information provided to the MDA would create a "broad public dissemination" of the records he requested as the organization does not regularly post content, and it has very little public support of content it posts. The situation in the present case is vastly different than *Burke,* where the court held that the information regarding a public health crisis would likely to be disseminated via a newspaper of general circulation.

Furthermore, under no circumstances would freedom of inquiry, freedom of expression, freedom of the press or any other freedom be "chilled" or even slightly impacted by the imposition of the City's reasonable fee. The mere fact that Plaintiff "intended" to write a public interest piece, and "intended" to submit the information to the MDA which may or may not post the information, does not automatically lead to the conclusion that public interest would be served by waiving a small, modest fee. Plaintiff believes his intentions fulfill the public interest component of §4-206(e), but the City's opposing belief is rational, based on "other relevant factors" and therefore cannot be deemed arbitrary or capricious.

As mentioned in Cynthia Walters' Affidavit, if the fee is waived in this case, the statutory mandate that the custodian of records consider the requester's ability to pay will be essentially meaningless. Consequently, custodians will have to waive MPIA fees no matter how insubstantial or speculative the request may be, if the requester says it is in the public interest or that he or she intends to write a paper or blog on the subject. Additionally, under the rule, a fee can be waived if, **"the official custodian determines** that the waiver would be in the public interest." Md. Code Ann. General Provisions Art. §4-206(e) (emphasis added). Based on the reasons above, the official custodian had the right to use his discretion and deny the fee waiver request, based on the advice provided by the Deputy City Attorney, Ms. Walters. A court

should not substitute its judgment for an administrative decision-maker's judgment, as long as

the administrator's decision is rational, and not "arbitrary and capricious." Because the City

made a rational decision, it is entitled to Summary Judgment as to Count I.

### B. The City is entitled to summary judgment of Count II as a matter of law because Plaintiff failed to show City denied his fee waiver as retaliation for his intended use of the information.

Discovery has yielded no evidence, and Plaintiff has no evidence that the City denied his

request as retaliation for his views or intended use of information. In *ACT*, the court held that

"the First Amendment's guarantee of free expression of speech protects persons from the

imposition of financial burdens based upon the content of their speech." 229 Md. App. 540 at

653. Additionally, the court stated that "a decision based upon...unconstitutional considerations

is clearly arbitrary and capricious." *Id.* at 564.

In *ACT*, the Court held the memorandum submitted by the Town made it vehemently clear

that it based the majority of its decision to reject multiple fee waivers based on its disdain for

*ACT* because the organization "had previously criticized the Town officials for their opposition

to the Purple Line. 229 Md. App. 540 at 564. Specifically, within its memorandum, the Town

argued it did not believe the waiver served public interest because of:

> Mr. Ross's known affiliation with ACT. Because of the history and Mr. Ross's apparent duplicity, the town obviously questioned the purpose of the fee waiver request, and whether it was for a public purpose and would be in the 'public interest.' Upon consideration of ACT/Ross's ability to pay, and the 'other relevant factors,' the Town ultimately determined the fee waiver would not be in the public interest and denied the request. *Id* at 561.

The court emphasized that the First Amendment "protects persons from the imposition of

financial burdens based upon the content of their speech." *Id.* According to the court, if a

decision to impose a fee is based on what the person or organization has said, then the decision

to deny a fee waiver is "clearly arbitrary and capricious." *Id.*

In addition to Plaintiff's lack of evidence of any discrimination based on his beliefs, the

City produced, during discovery, evidence that it has provided information to individuals with

the same views as Plaintiff, free of charge. Specifically, the City has provided information to

Ronald Ely, the blogger who personally runs the MDA (formerly Stop Big Brother, Maryland).

See Exhibit 9, email dated October 24, 2012). If the City opposed people holding adverse

opinions, Ely, who has written and complained about the same automated traffic enforcement

systems, presumably also would have had his fee waiver denied.

Finally, it cannot be argued that the City did not actively work on Plaintiff's MPIA request,

as evidenced by weeks of email correspondence. Unlike the agency in *ACT,* the City spent time

researching, collecting and reviewing documents which it provided to Plaintiff, *gratis.* The City

did not request the fee at outset of the MPIA request, like the agency in *ACT* If the City intended

to discriminate against Plaintiff, it would have followed the pattern of the agency in *ACT,* and not

provided any information until it received a deposit. Additionally, the City would not have acted

proactively as it did if it opposed Plaintiff's viewpoints and intended to discriminate against him.

The City's administrators would not have had meetings to discuss the status of Plaintiff's MPIA

request, and would not have spent time drafting, editing and sending emails to him containing a

large portion of the materials he requested, *gratis. See* Exhibit 7, email chain between Tanya

Porter and Louise Atkins. The City merely requested a reasonable fee for its time and effort in

fulfilling Plaintiff's comprehensive MPIA request. To interpret the City's actions as wrong would

render the provisions allowing the City to deny a fee waiver meaningless.  Because of Plaintiff's

lack of evidence supporting his claim and the City's diligence in gathering information, and

responding to Plaintiff, the City is entitled to summary judgment as to Count II as a matter of law.

## V.    Conclusion

For the reasons stated above, The City of Rockville is entitled to summary judgment as a matter of law.

Respectfully submitted,

KARPINSKI, COLARESI & KARP, P.A.

By:  _____

DANIEL KARP, #00877
Suite 1850
120 East. Baltimore Street
Baltimore, Maryland 21202-1617
(410) 727-5000
(410) 727-0861 (facsimile)
Brunokarp@bkcklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2018, a copy of the foregoing Memorandum in Support of Motion for Summary Judgment was electronically filed, with notice to:

Eric Wang, *Pro Se*
38 Maryland Avenue, Unit 515
Rockville, Maryland 20850
Plaintiff

_____
Counsel for Defendant